# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>YOIRLAN TOME ROJAS,<br><br>Defendant. | No. CR14-4015-MWB<br><br>*ORDER GRANTING MOTION FOR PRETRIAL DETENTION* |

## *INTRODUCTION*

This case is before me on a motion by plaintiff (the Government) for pretrial detention. I conducted a detention hearing on March 3, 2014. Assistant United States Attorney Jamie Bowers appeared for the Government. Defendant Yoirlan Tome Rojas appeared personally and with his attorney, Assistant Federal Public Defender Bradley Hansen. The Government presented testimony from Special Agent Michael Hawkins with the United States Secret Service. The Government also offered the following exhibits, which were received into evidence without objection:

> *Government Exhibit 1*: Front of four credit cards issued to Tome Rojas
>
> *Government Exhibits 2-6*: Photographs of video surveillance at a Wal-Mart store
>
> *Government Exhibit 7*: Demonstrative photograph of an MSR606 device that can be used to re-encode the magnetic strip on credit cards

Defendant did not present any testimony or proffer. I also considered the information contained in the pretrial services report. The motion is fully submitted.

## ANALYSIS

### I. Applicable Standards

A request to detain a defendant pending trial triggers a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). As a threshold matter, the Government must show by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id*. Pretrial detention is not authorized unless at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two circumstances involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

If the Government makes this threshold showing, then I must determine, pursuant to Section 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id*. The Government has the burden of (a) showing by clear and convincing evidence that no condition or combination of conditions imposed on the defendant would reasonably assure the safety of the community if he or she were released *or* (b) showing by a preponderance of the evidence that no condition or combination of conditions imposed on defendant would reasonably assure the defendant's appearance if he or she were released. A defendant may be detained on the basis of a showing of either dangerousness or risk of flight; it is not necessary to show both. *United States v. Apker*, 964 F.2d 742, 743 (8th Cir. 1992) (per curiam); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986) (per curiam).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, I must consider the factors outlined in 18 U.S.C. § 3142(g), including (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a firearm; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. I must then determine whether any of the conditions under 18 U.S.C. § 3142(c) can reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc).

## II. Discussion

### A. Does The Government Have The Right To Seek Detention?

As noted above, the Government cannot seek pretrial detention in any case unless the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or the defendant presents certain risk factors, as identified in Section 3142(f)(2). Here, the charges against Tome Rojas do not fall within the offenses listed under 18 U.S.C. § 3142(f)(1). However, the Government argues, and I find, that this case involves a serious risk that Tome Rojas will flee. Thus, the Government is entitled to seek detention pursuant to 18 U.S.C. § 3142(f)(2)(A). Tome Rojas did not argue otherwise during the hearing. I must now consider whether the Government has made either of the alternative showings necessary to justify detention.

### B. *Is Pretrial Detention Warranted?*

This question requires application of the Section 3142(g) factors to the evidence in the record. With regard to the nature and circumstances of the offenses charged, Tome Rojas is charged in a six-count indictment with: using counterfeit access device (counts 1 and 2), possession of fifteen or more counterfeit access devices, money laundering, false use of social security number and aggravated identity theft. Doc. No. 1. According to the pretrial services report and Hawkins's testimony, similar charges were brought against Tome Rojas in state court on November 6, 2013, and he has been free on bond since January 2014. Hawkins testified that when Tome Rojas was arrested in this case on February 27, 2014, two identical sets of four credit cards were found in Tome Rojas's wallet. After further investigation, he discovered one of the sets had re-encoded magnetic strips on the back, meaning the 16-digit account number on the front of four of the cards did not match the number encoded on the magnetic strip. All of the cards were genuine credit cards issued to Tome Rojas. Hawkins testified that the fraudulent nature of these cards is different than that of the cards associated with Tome Rojas's state court charges, which are 244 counterfeit, manufactured cards. Hawkins indicated that re-encoding legitimate credit cards requires more sophisticated technology, such as a card re-encoder and specialized software.

This is concerning because it suggests Tome Rojas has been engaged in ongoing criminal conduct while out on bond for state charges accusing him of very similar conduct. Moreover, as Hawkins testified, the new cards found in Tome Rojas's wallet suggest Tome Rojas is using, or has access to, more sophisticated technology to commit the alleged fraud than he did earlier. Hawkins also testified that Tome Rojas seemed shocked to learn one of the federal counts against him carries a two-year mandatory minimum term of incarceration if he is convicted. Given Tome Rojas's apparent access to manufactured or re-encoded credit cards and his reaction to the possible penalty for

one of the charges against him, I find this factor supports a finding of risk of flight and danger to the community if Tome Rojas were released.

The weight of the evidence is another factor to consider. The record made at the detention hearing shows the evidence against Tome Rojas at this stage of the case is strong. Besides the altered cards found in his wallet at the time of his arrest, the Government has video surveillance of Tome Rojas at a Wal-Mart store attempting to use multiple credit cards at a register before making a purchase at the time and place a victim identified a fraudulent charge on her account. Hawkins also testified that the Storm Lake Police Department has interviewed numerous individuals who have information about Tome Rojas's alleged fraudulent purchases, such as selling store gift cards to others at a discount. There is also evidence that he used multiple credit cards to purchase salvaged cars from a particular dealer and then paid a mechanic in gift cards to repair those vehicles. Finally, the Government presented evidence that Tome Rojas used another person's identification to obtain and maintain a job for several months. In short, this factor supports a finding of risk of flight and danger to the community if Tome Rojas were released.

Tome Rojas's history and characteristics also make him a poor candidate for pretrial release. While he does have a young daughter in the area, he is unemployed, resides in an apartment and appears to have no other ties to the community. Meanwhile, as noted above, there is evidence that Tome Rojas has used a false identity in the past. Moreover, Hawkins testified Tome Rojas has friends and family in Cuba, Texas and Florida. Tome Rojas is a Cuban national and Hawkins testified that based on his conversation with a Homeland Security agent, it would be "extremely difficult, if not impossible" to have Tome Rojas extradited back to the United States to face these charges if he returned to Cuba. While Tome Rojas's passport is in police custody, I find that to

be of little reassurance given the nature of the charges in this case and the evidence presented by the Government. This factor supports a finding of risk of flight.

Finally, in considering the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release, I note that economic harm can be considered in evaluating danger to the community. *See United States v. Madoff*, 586 F. Supp. 2d 240, 252-53 (S.D.N.Y. 2009) (citing cases). Indeed, the legislative history of the Bail Reform Act clearly expresses this intent. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). I find the nature and seriousness of the danger to the community that could be posed by Tome Rojas's release is great. Based on the evidence presented by the Government, Tome Rojas seems to have ready access to accounts that do not belong to him. I cannot fathom any condition or combination of conditions that could reasonably protect the community from economic danger if Tome Rojas were released.

In short, and based on the record before me, I find that the Government has met its burden of proving that no condition or combination of conditions can reasonably assure Tome Rojas's appearance at trial, or the safety of the community, if he were to be released from custody pending his trial in this case.

## *CONCLUSION*

For the reasons set forth herein, I hereby **grant** the Government's motion for pretrial detention, as follows:

1. Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.
2. The Attorney General shall afford defendant reasonable opportunity for private consultation with counsel while detained.
3. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.
4. If a "review" motion for revocation or amendment is filed, pursuant to 28 U.S.C. § 3145(a) or (b), the party requesting a change in the original order *must*: (a) attach a copy of the release/detention order to the appeal and (b) promptly secure a transcript.
5. There is *no automatic stay* of this Order. Therefore, the defendant must request such relief from the court.

**IT IS SO ORDERED.**

**DATED** this 4th day of March, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE