**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

　　　　Plaintiff,

vs.

YOIRLAN TOME ROJAS,

　　　　Defendant.

No. CR14-4015-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION AND BACKGROUND............................................. 2*
　　*A.   Procedural Background ............................................................. 2*
　　*B.   Factual Background ................................................................... 4*
*II.  LEGAL ANALYSIS ............................................................................ 7*
　　*A.   Standard Of Review ................................................................... 7*
　　*B.   Objections To Report And Recommendation ............................. 12*
　　　　*1.   Police's entering the driveway ........................................ 12*
　　　　*2.   Search of the storage closet ............................................ 14*
　　　　*3.   General objection ............................................................ 18*
*III. CONCLUSION ................................................................................. 19*

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On March 20, 2014, a Superseding Indictment was returned against defendant Yoirlan Tome Rojas charging him with using a counterfeit access device, in violation of 18 U.S.C. § 1029(a)(1) (Counts 1 & 2), possession of fifteen or more counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 3), money laundering, in violation of 18 U.S.C. § 1956(a)(1) (Count 4), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 5 & 6).

On September 9, 2014, Rojas filed a motion to suppress in which he seeks to suppress all evidence seized as a result of the search of his apartment and an adjacent storage closet pursuant to search warrants. Rojas contends that it was unlawful when police stopped him and entered onto the curtilage of his home. He also alleges the police violated his 5th Amendment rights when they asked him his address. He further contends that the search warrants lacked probable cause. Rojas finally argues that the *Leon* good-faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897 (1984), should not apply because law enforcement officers could not have acted in good faith reliance on the search warrants.

The prosecution filed a timely resistance to Rojas's motion. Rojas's motion to suppress was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). On September 29, 2014, Judge Strand conducted an evidentiary hearing and subsequently filed a Report and Recommendation on October 3, 2014, in which he recommends that Rojas's motion to suppress be denied. In his Report and Recommendation, Judge Strand concluded that the police were justified in conducting a *Terry* stop of Rojas. Judge Strand also found that the police were justified in following Rojas into the driveway and that the driveway was not within the protected curtilage of the home. Judge Strand, alternatively, concluded that even if the driveway qualified as

2

part of the house's curtilage, the police did not violate Rojas's rights when they pulled into the driveway and initiated a *Terry* stop at that location did not violate Rojas's rights. In a second alternative determination, Judge Strand concluded that Rojas had failed to prove that he had a legitimate expectation of privacy in the driveway. Judge Strand further determined that, based on the additional information learned during the *Terry* stop, the police had probable cause to arrest Rojas for credit card fraud. Judge Strand further determined that asking Rojas his address did not violate Rojas's Fifth Amendment rights because asking such a routine processing type question did not constitute interrogation. Judge Strand also concluded that, based on the totality of circumstances, probable cause supported the state judge's issuance of the first search warrant for Rojas's apartment. Likewise, based on the totality of circumstances, Judge Strand found that probable cause supported the state judge's issuance of the second search warrant for Rojas's storage closet adjacent to his apartment. Judge Strand noted that the police's seizure of the keys for the storage closet fell within the scope of the first search warrant and was not improper. He also concluded that the police's insertion of a key into the storage closet door, in order to confirm that the keys were for that closet, was not a search. Judge Strand further determined that the police's seizure of three VISA gift guards pursuant to the second search warrant was lawful. Finally, Judge Strand concluded that, if the search warrant applications were not supported by probable cause, the *Leon* good-faith exception to the exclusionary rule applies because the law enforcement officer obtaining the search warrants acted in reasonable reliance on the state magistrate's determinations of probable cause for issuance of the warrants. Therefore, Judge Strand recommended that Rojas's motion to suppress be denied.

On October 8, 2014, Rojas filed objections to Judge Strand's Report and Recommendation. The prosecution filed a timely response to Rojas's objections on

October 9, 2014. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Rojas's motion to suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Strand made the following factual findings:

> On November 6, 2013, SLPD was contacted by an individual in Colorado who reported that his credit card had been used at the Storm Lake Wal-Mart store without his permission. A SLPD officer went to the store, spoke with the store's loss prevention manager and gathered video surveillance evidence and receipts concerning the transaction at issue. The in-store video shows a man in tan Carhart-style coveralls using numerous credit cards to purchase gift cards at two different registers. The parking lot video shows the same suspect driving a two-toned (dark over gray) Chevy truck. The truck has certain distinguishing features, including a dark stripe on the gray portion, a box or tank in the truck bed, adjacent to the cab, a black grill, chrome mirrors and after-market rims. Based on this information, the investigating officer posted a bulletin in the station alerting all SLPD officers to be on the lookout for a Hispanic male suspect driving the Chevy truck. Def. Ex. E. The bulletin included still photos of the suspect and the truck. *Id*.
>
> On November 12, 2013, SLPD Officer Matt Younie was on patrol and observed a distinctive Chevy truck that appeared to match the truck described in the bulletin. Younie testified he recognized the truck because of several features, including the two-tone paint, the tank or box in the bed of the truck, the chrome mirrors and the wheel rims. At that time he was unable to see the driver of the truck. However, he followed it without activating his emergency lights until the truck pulled into a residential driveway off East 4th Street in Storm Lake. The driver parked the truck two or three car

lengths from the street and got out of the vehicle. Younie pulled into the driveway behind the truck and saw that the driver was wearing tan Carhart-style coveralls.

Younie approached the driver and asked for his driver's license. The driver complied. The license identified the driver as defendant Yoirlan Tome Rojas and listed his address as 801 Erie Street, Apartment 8. Younie told Rojas that the truck and a suspect who looked similar to him were implicated in a credit card scheme at Wal-Mart. He then advised Rojas that he would need to come to the police station to answer questions. Rojas asked to speak with his wife for a moment and was permitted to do so. Rojas walked up to the porch of the home and had a brief conversation with a female occupant.

After this conversation, Younie escorted Rojas to the squad car and placed him into the back seat. Younie testified that he did not place handcuffs on Rojas because he was being cooperative. While Rojas was getting into the car, Younie asked him for the address of their current location so he could request a tow for the truck. Rojas initially answered with his own address: 801 Erie Street, Apartment 8. Younie then clarified the question and Rojas stated that the address was 1708 Rose Lane. Younie did not ask additional questions during the drive to the station. Once there, Rojas was placed in an interview room. After being advised of his Miranda rights, Rojas invoked his right to refuse to answer questions. In response to routine booking-process questions, however, he stated that his address was 801 Erie Street, Apartment 8.

After bringing Rojas to the police station, Younie fielded a call from an individual in Michigan who reported that a fraudulent credit card transaction had occurred on September 13, 2013, at the same Storm Lake Wal-Mart store. Younie followed up on the report, contacting the Wal-Mart

loss prevention team and obtaining store video and other evidence concerning that transaction.

Meanwhile, SLPD Detective Flikeid arrived at 1708 Rose Lane to view the truck Rojas had been driving. Flikeid walked around the truck, which was still parked in the driveway, and determined it to be the same truck depicted in the Wal-Mart store video associated with the first credit card fraud report. Flikeid ran the truck's license plates and learned that the truck was registered to Rojas at the 801 Erie Street, Apartment 8, address. Based on Younie's encounter and the information gathered so far, Flikeid applied for a warrant to search the apartment at that address.

Flikeid presented an application for search warrant to a state court magistrate late that evening and answered questions posed by the magistrate. The magistrate made several notations on the application, including a note that the address to be searched "is reflected as the address of Yoirlan Tome Rojas on his drivers license and was acknowledged by Yoirlan Tome Rojas as his residence." Gov't Ex. 2 at 11. The magistrate found probable cause to issue the requested warrant and issued it on November 13, 2013 at 12:29 a.m.

Flikeid and Younie, along with other SLPD officers, then went to 801 Erie Street, Apartment 8, to execute the search warrant. The officers noted that the apartment building includes, in a common hallway, storage closets with numbers that correspond to the apartment unit numbers. For example, one storage closest is marked as number 8, suggesting that it may be associated with apartment number 8.

Once inside Rojas' apartment, the officers found a set of keys in plain view on a coffee table and suspected that one of the keys would open storage closet number 8. They went to that closet, inserted the key and confirmed that it opened the door to that closet. They then opened the door briefly to

look inside. At that point, according to Flikeid, he became concerned that the existing warrant might not authorize a search of the separate closet unit. He reviewed the warrant and noted that it did not contain language that is sometimes inserted that would have authorized that search. Flikeid closed the door and instructed Younie to stand guard and secure the closet while Flikeid sought a second warrant.

Flikeid presented a second warrant application to the same magistrate, who again asked questions and made handwritten notations on the application and proposed warrant. Among other things, she noted that Flikeid had located the keys to the storage closet in plain sight on the coffee table in the apartment. The magistrate found probable cause to issue the second warrant and issued it on November 13, 2013, at 3:32 a.m. Gov't Ex. 3 at 12. The second warrant expressly authorized a search of "a storage closet located in the hallway of the apartment complex" that "is labeled in the door with the #8." *Id*. at 13. In executing the second warrant at the storage closet, the officers found and seized incriminating evidence including hundreds of manufactured credit cards, assorted mail connecting Rojas with the apartment, Rojas's passport, a bank checkbook, a Tyson Foods ID card with the name Jose Mazo and Rojas's photo and a list of Wal-Mart stores.

Report and Recommendation at 2-5. Upon review of the record, I adopt all of Judge Strand's factual findings.

## II. LEGAL ANALYSIS
### A. *Standard Of Review*

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or

> recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The

*de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and

9

no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a

definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. See *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain

As noted above, Rojas has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Rojas's motion to suppress.

### B. Objections To Report And Recommendation

#### 1. Police's entering the driveway

Rojas initially objects to Judge Strand's conclusion that the police did not illegally enter the curtilage of the house at 1708 Rose Lane when they entered the rear driveway. This objection is rendered moot by Judge Strand's finding that Rojas failed to show that he, personally, had any legitimate expectation of privacy in the house at 1708 Rose Lane.

---

error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

Rojas has not objected to this finding nor could he in good faith. Fourth Amendment rights are personal rights that may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978); *see United States v. Douglas*, 744 F.3d 1065, 1071 (8th Cir. 2014); *United States v. Skoda*, 705 F.3d 834, 837 (8th Cir. 2013); *United States v. Ruiz–Zarate*, 678 F.3d 683, 689 (8th Cir. 2012); *see also United States v. Salvucci*, 448 U.S. 83, 85 (1980) (explaining "that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated"). That is, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. Consequently, Rojas must show that "'(1) he has a reasonable expectation of privacy in the areas searched or the items seized, and (2) society is prepared to accept the expectation of privacy as objectively reasonable.'" *Skoda*, 705 F.3d at 837 (quoting *Ruiz–Zarate*, 678 F.3d at 689). Here, Rojas presented no evidence that he was the owner or occupant of, or even an overnight guest at, the Rose Lane residence. Thus, he has not established that he had a reasonable expectation of privacy in the Rose Lane residence. *See United States v. Davis*, 103 F.3d 660, 671 (8th Cir. 1996) (holding that defendant did not have a legitimate expectation of privacy in the apartment searched when he neither lived at the address nor "was a guest in the home at the time of the search"); *see also United States v. Brown*, 408 F.3d 1049, 1051 (8th Cir. 2005) ("There was no evidence Brown had a reasonable expectation of privacy in Lewis's residence, because he was not present during the search, did not live at the residence, and did not have a key to the residence."). Accordingly, Rojas lacks a Fourth Amendment right to contest the validity of the police's entry onto the Rose Lane residence's driveway and this objection is overruled.

Assuming, arguendo, that Rojas had a legitimate expectation of privacy in the Rose Lane residence, s*ee Minnesota v. Olson*, 495 U.S. 91, 97-98 (1990) (holding that overnight guest could have expectation of privacy in host's home), Rojas's objection fails on the merits. The Eighth Circuit Court of Appeals has repeatedly held that individuals have no reasonable expectation of privacy in their driveways when there are no barriers to access and the driveways are open to public view. *See, e.g., United States v. Cicneros-Gutierrez,* 598 F.3d 997, 1005 (8th Cir. 2010) ("[N]o Fourth Amendment search occurs when officers 'restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways.'") (quoting *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984)); *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006) ("[W]e will not extend [the defendant's] expectation of privacy to his driveway, walkway or front door area."); *United States v. Khabeer*, 410 F.3d 477, 482 ((8th Cir. 2005) (holding that no Fourth Amendment violation occurred where police observations were made from residence's driveway); *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir. 1982) ("[A] driveway and portion of the yard immediately adjacent to the front door of the residence can hardly be considered out of public view."). So, whether or not the driveway was curtilage, the police did not violate Rojas's Fourth Amendment by viewing his pickup truck while standing in the driveway that was open to public view. Accordingly, this objection is also overruled on the merits.

### 2. *Search of the storage closet*

Rojas also objects to Judge Strand's determination that evidence gathered during the execution of the second search warrant need not be suppressed. Rojas asserts that the second search warrant was tainted by the police's earlier warrantless search of the storage closet.

The Fourth Amendment to the United States Constitution guarantees the right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. Searches

and seizures conducted without warrants issued by a judge are per se unreasonable unless a specifically established exception applies. *See Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967); *United States v. Goodrich*, 739 F.3d 1091, 1096 (8th Cir. 2014); *United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013). Searches conducted without warrants have been held unlawful "notwithstanding facts unquestionably showing probable cause," *Agnello v. United States*, 269 U.S. 20, 33 (1925), because the Constitution requires "'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police.'" *South Dakota v. Opperman*, 428 U.S. 364, 381 (1976) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963)). The burden is on the government to demonstrate that an exception to the warrant requirement applies, and that burden is a heavy one. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

Generally, evidence obtained in violation of the Fourth Amendment is inadmissible at trial. *See Mapp v. Ohio*, 367 U.S. 643, 648 (1961). The Supreme Court has explained that:

> The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search. Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint.

*Murray v. United States*, 487 U.S. 533, 536-37 (1988) (internal quotes and citations omitted). Such derivative evidence acquired as a consequence of an illegal search or seizure is inadmissible under the "fruit of the poisonous tree" doctrine. *See Wong Sun*, 371 U.S. at 485–86.

I conclude that the police engaged in a warrantless search of the storage closet when they unlocked it and momentarily glimpsed inside it.[2] However, at that point, Detective Flikeid became concerned that the search warrant for the apartment might not authorize a search of the storage closet. As Detective Flikeid explained:

> During the execution of the first warrant, because my warrants tend to have a blanket statement in it which allows me to search other places connected to the address, my initial thought is we did not need the warrant. When we find the keys, we go, oh, these are probably the keys to this closet. We go; we check to make sure it works, and at that point I take a moment. I say hold on. Let's go back to the warrant. And I actually reviewed the warrant to see if there was that statement in there that would have allowed me to do that. I did not believe we could at that point. So I decided to secure the closet and apply for a second search warrant.

Evid. Hearing Tr. at 68. Thus, after Detective Flikeid reviewed the warrant and noted that it did not contain language that he sometimes had in warrants that would have authorized that search, he closed the storage closet door and instructed Officer Younie to stand guard and secure the closet while Detective Flikeid sought a search warrant for the storage closet.

The search warrant for the storage closet was not based on any information obtained solely through the initial warrantless search. Instead, the search warrant was based on information obtained by the police during their investigation, including evidence

---

[2]Detective Flikeid testified that he saw: "A lot of miscellaneous things. There was stuff hanging from a clothes rack. There was a suitcase. There's a lot of miscellaneous stuff inside there." Evid. Hearing Tr. at 81.

found during the search of Rojas's apartment.[3] Thus, the prosecution has shown that the information contained in the search warrant affidavit was based on information obtained from sources independent of the allegedly warrantless opening of the storage closet. *See, e.g. Murray,* 487 U.S. at 542 n.3 (holding that to determine whether a search warrant was independent of an illegal entry, the court should determine whether the warrant would have been sought "even if what actually happened had not occurred . . . what counts is whether the actual illegal search had any effect in producing the warrant, not whether some hypothetical illegal search would have aborted the warrant."); *Segura v. United States*, 468 U.S. 796, 799 (1984) (holding that "the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as 'fruit' of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920)."). Detective Flikeid's decision to apply for the search warrant for the storage closet was completely unrelated

---

[3]Detective Flikeid's only mention of the storage closet in his affidavit was as follows:

> During the search of the apartment Officers located in the common area hallway of the apartment complex a storage closet with #8 on the door. Affiant then believing the closet was storage for apartment #8 located a set of keys inside the apartment. Affiant used the keys and found the keys opened this storage closet. Affiant the [sic] secured the closet while this warrant was applied for. Officer Youine also at this time stood-by assuring the closet remained secured while this warrant was sought.

Government Ex. 3 at 9.

to the warrantless opening of the storage closet. More importantly, no information concerning the warrantless opening of the storage closet was presented to the magistrate and, therefore, the warrantless opening of the storage closet had no effect on the magistrate's decision to issue the search warrant for the storage closet. Suppression of the evidence seized from the storage closet would serve no purpose other than to put the prosecution in a worse position than had the warrantless entry never occurred. This would be a remedy out of proportion to the Fourth Amendment transgression that occurred and is uncalled for under the circumstances. See *Segura*, 468 U.S. at 805 (holding that "the exclusionary rule has no application [where] the Government learned of the evidence 'from an independent source.'") quoting *Wong Sun*, 371 U.S. at 487) (quoting in turn *Silverthorne Lumber Co.*, 251 U.S. at 392) (internal quotation marks omitted). Accordingly, this objection is also overruled.

### 3. *General objection*

In addition to his specific objections to Judge Strand's Report and Recommendation discussed above, Rojas also objects "generally to the entire report and recommendation." Rojas's Br. at 3. General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991); *see United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Reed v. Curry Concrete Constr. Inc.*, Civ. No. 10–4329, 2011 WL 2015217, at *2 (D. Minn. May 23, 2011) ("[W]hen a party is simply unhappy with the results and does not cite any reason why the Magistrate Judge's determination was incorrect, nor any basis for this Court to reach a different outcome, the Court may review the Magistrate Judge's recommendations as if no objections were filed." (alterations and internal quotation marks omitted)). Therefore, I deny Rojas's objection on the ground that he has failed to state his objection with the requisite particularity. Nonetheless, I

note that I have made an independent *de novo* review of the record and Judge Strand's Report and Recommendation. Based on my review, I find that Judge Strand's findings and recommendations are correct and I accept them.

## III. CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Rojas's motion to suppress.

**IT IS SO ORDERED**.
**DATED** this 10th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA